Auer, Respondent, vs. Vahl and another, Appellants.

*October 15—November 7, 1906.*

*Landlord and tenant: Duty to make repairs: Modification of lease:·
Abandonment of premises.*

1. An oral agreement, made some months after the execution of a.
   written lease, relating to the making by the lessor of certain
   specific repairs in the leased building is *held* to have been sep-
   arate from and independent of the lease and not to have altered.
   or modified a provision therein that the lessee should make all.
   necessary repairs inside the premises.
2. Where the lessee expressly covenanted to make all necessary re-
   pairs inside of the leased premises, he cannot justify an aban-
   donment of the lease and refusal to pay rent on the ground of·
   the lessor's failure to make such repairs.

Appeal from a judgment of the circuit court for Milwau-
kee county: J. C. Ludwig, Circuit Judge. *Affirmed.*

It appears from the record that April 6, 1904, the plaintiff
by a written lease leased to the defendants the store and liv-
ing rooms in the rear of the store and upper rear rooms of
the premises described for the term of three years from Au-
gust 1, 1904, at the monthly rent of $35, payable on the 1st
day of each month during the term, and the first or August
payment was therein made payable April 11, 1904, and was
paid on that day, which lease contained several mutual agree-
ments or covenants, among others the following:

"It is mutually agreed and understood that the said lessee
shall keep the said premises in as good repair as the same are
in at the commencement of said term, reasonable use and
wear thereof and damage by accidental fire or other acci-
dents, not happening through the neglect of said lessee, his
agents or servants, only excepted. It is mutually agreed and
understood that the said lessor shall keep the *outside* of said
premises in good repair and whole, and the said lessee shall
make all necessary *repairs inside* of said premises."

And further, "it is mutually agreed and understood that
the said lessee shall keep the glass in the windows and doors

in good repair and whole, damage by the elements only excepted." At the time of making the lease the premises were occupied by other persons who moved out the latter part of July, 1904. The defendants claim that the premises were then in bad condition. August 1, 1904, the defendants wrote to the plaintiff to the effect that if he was willing to fit up the store and rooms at once as indicated therein at a cost of $55 the defendants would be willing to pay on such bill $20, and designated the name of a person who would do the work for the amount stated. August 6, 1904, the defendants again wrote to the plaintiff that they could not understand why he did not let the contract to repair the store and rooms, and urged him to do so. August 11, 1904, the plaintiff wrote to the defendants to the effect that their representative had left with the plaintiff the Thursday before the key to the front door of the premises which they leased from August 1, 1904, asking the plaintiff to fix up the same, and further, that "we have repapered the walls of the store and the living rooms in the rear, and painted the woodwork in the store, as well as in the rooms and the store front. Will you kindly call or telephone and let us know what disposition you desire to have us make of the key, which will be at your office to-morrow noon?"

December 15, 1904, the plaintiff commenced this action. The complaint alleges two causes of action, one to the effect that the defendants had voluntarily and without cause abandoned the premises on or about August 12, 1904, and had not paid the rent for September, October, November, and December, 1904, amounting to $140, except that the plaintiff had collected from other parties as and for rent of certain portions of the premises for those months $72, leaving a balance of $68, for which he prayed judgment. For a second cause of action the complaint alleges that the defendants agreed to pay to the plaintiff the $20 mentioned for calcimining, painting, and papering certain rooms upon the premises, and also demanded judgment for $20.

The defendants answered and admitted the making of the lease and the failure to pay rent during the four months mentioned, and that the premises were in good condition and repair at the time the lease was made, but denied that they abandoned the premises without cause, and alleged in effect that the former tenants had left the premises in an unfit condition for tenancy, and that thereupon they had notified the plaintiff that they would not retain possession unless the premises were put in good repair, and that the plaintiff had failed and neglected to repair as requested by the defendants. The defendants further answered by way of counterclaim, and claimed $200 damages for such failure of the plaintiff to repair the premises as requested, with which the plaintiff took issue.

The court instructed the jury that the plaintiff was entitled to recover the $68 for loss of rent as mentioned, and submitted to the jury the question as to the defendants' liability for the $20 mentioned. The jury found that the defendants were not liable for the $20, but only for the $68. From the judgment entered thereon in favor of the plaintiff for $68 and costs the defendants appeal.

For the appellants there was a brief by *McElroy, Eschweiler & Wetzler,* and oral argument by *S. F. Wetzler.*

*Joseph G. Hirschberg,* for the respondent.

CASSODAY, C. J. The jury found that the defendants were not liable to the plaintiff for the $20 which the defendants had offered in August, 1904, to contribute in case the plaintiff would make certain repairs. That eliminates from the case all question as to the plaintiff's second cause of action.

The error assigned and relied upon is that the court instructed the jury to render a verdict in favor of the plaintiff for the loss of rent amounting to $68. This ruling was evidently based upon the ground that it appeared from the undisputed evidence that the defendants had voluntarily aban-

doned the premises without cause; and hence, under the written lease, they were liable for the rent which they had therein agreed to pay. It is conceded in the answer that the premises were in good condition and repair at the time of the execution of the written lease. As indicated in the foregoing statement, the plaintiff was only to "keep the outside of said premises in good repair and whole," and the defendants therein expressly covenanted and agreed to "make all necessary *repairs inside* of said premises" and to "keep the glass in the windows and doors in good repair and whole" and the premises in good repair. There is no claim that the plaintiff breached such written lease, nor that by the express terms of the written lease the defendants were not bound to "make all necessary repairs *inside* of said premises." The claim is that the plaintiff breached an alleged oral agreement made four months after the execution of the written lease. It is said that when such oral "agreement was made a new element was injected into the contract of leasing, viz., a covenant on the part of the lessor to make certain repairs, and from that time on the lease must be treated as though the agreement were expressly incorporated and stated in it." We find no evidence to support such contention. Neither the answer nor the letters of the defendants make mention or reference to any alteration or modification of the written lease. The oral agreement or attempted agreement relating to certain specified repairs was entirely separate and independent of the written lease. It was the basis of a separate and independent cause of action in the complaint, and so treated by the defendants and the trial court. On the undisputed evidence we must hold that the written lease was never altered nor modified.

As the case stands the defendants are seeking to justify their abandonment of the premises and refusal to pay rent on the ground that the plaintiff had failed to do what they themselves had expressly covenanted and agreed to do. It is

well settled that, in the absence of any secret defect or deceit or warranty or agreement on the part of the landlord to repair, the tenant takes the leased premises in the condition they happen to be in at the time of the leasing. *Cole v. Mc-Key,* 66 Wis. 500, 505, 506, 29 N. W. 279, and cases there cited. Among the cases there cited is *Hart v. Windsor,* 12 M. & W. 68, which seems to be directly in point. See, also, *Kuhn v. Sol. Heavenrich Co.* 115 Wis. 447, 91 N. W. 994. There is no dispute as to the amount of rent lost by the plaintiff by reason of the breach of covenants on the part of the defendants.

*By the Court.*—The judgment of the circuit court is affirmed.